IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs August 5, 2025

## STATE OF TENNESSEE v. PATRICK PLUNK

**Appeal from the Circuit Court for Crockett County**
No. 5052    Clayburn Peeples, Judge

_____

**No. W2024-01698-CCA-R3-CD**

_____

The Defendant, Patrick Plunk, appeals from the order of the trial court revoking his probation. He argues that the trial court abused its discretion by failing to properly apply the two-step process required for probation revocation. In addition, the Defendant contends the record contains no reliable evidence to support revocation and no findings regarding the appropriate consequence, rendering the record insufficiently developed for appellate review. The State responds that the record contains substantial evidence supporting the revocation. After review, we affirm the trial court's revocation of the Defendant's probation but remand for the trial court to make findings concerning the consequence imposed for the revocation.

**Tenn R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed in Part, Reversed in Part, Case Remanded**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which KYLE A. HIXSON, and STEVEN W. SWORD, JJ., joined.

Cynthia Chandler, Medina, Tennessee, for the appellant, Patrick Plunk.

Jonathan Skrmetti, Attorney General and Reporter; Richard D. Douglas, Senior Assistant Attorney General; Frederick Agee, District Attorney General; and Holden Kirk, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The probation violation report issued by Corrections Management Corporation ("CMC") listed the Defendant's probation violations as follows:

[The Defendant] was sentenced to Corrections Management Corporation on 12/10/2021 for a period of 6 years on the conviction of Aggravated Assault – Strangulation. [The Defendant] was ordered to serve 11 months and 29 days then his sentence would be redesignated to Corrections Management Corporation for the duration of his sentence.

A capias was issued on 06/16/2022 due to technical violations and a new arrest. On 06/17/2022, [the Defendant] was reinstated to CMC. A capias was issued on 06/28/2022 due to a new arrest. On 08/24/2022, [the Defendant] was reinstated to CMC. A capias was issued on 12/22/2022 due to absconding and a new felony charge [of Aggravated Assault]. On 06/09/2023, [the Defendant] was revoked and reinstated to begin anew. [The Defendant] was released from jail on 07/19/2023.

[I, 64].

After release, a capias was issued on September 28, 2023, ordering the Defendant be held without bond for the following probation violations:

[The Defendant] is in violation of rule #2, which states, "All Offenders under house arrest will be required to remain at home unless performing community service, working, or attending classes or counseling." [The Defendant] was not at home when checked on the following dates: 07/21/2023 at 6:18pm, 07/29/2023 at 5:32pm and 08/16/2023 at 5:05pm.

[The Defendant] is in violation of rule #6, which states, "Offenders will not use or possess intoxicants, inhalants, narcotic drugs or controlled substances, nor visit business establishments where alcoholic beverages are the primary source of business. Offenders will also be subject to random alcohol and drug screening. Refusal to submit to a drug screen will be an admission of a positive screen and a violation. Offenders will be subject to prosecution for alteration or attempt to alter a drug test pursuant to TCA 39-17-437." [The Defendant] tested positive for Methamphetamine and Amphetamine on 08/22/2023. [The Defendant] admitted to using and the specimen was confirmed positive by the lab. Due to numerous missed weekly meetings, [the Defendant] has not been randomly drug screened.

A Drug and Alcohol Assessment was completed on 09/18/2023. Based on [the Defendant]'s answers to the assessment, he scored Slight and was not recommended to complete [Intensive Outpatient Program].

[The Defendant] is in violation of Rule #10, which states, "All offenders will report, in person, to their supervising Case Officer at a predestinated meeting place. At this meeting, the Case Officer and Offender will develop a weekly activity schedule which the offender must follow and complete." [The Defendant] has missed the following scheduled weekly meetings: 08/01/2023, 09/12/2023 and 09/26/2023.

[I, 64].

On October 11, 2024, the trial court held a hearing on the Defendant's probation violations. [II, 1-25]. At the hearing, the State called one witness, Officer Amy Michael, an employee of CMC. Officer Michael provided the dates for the Defendant's previous probation violations and reinstatements. Officer Michael stated that the violation at issue was the Defendant's fourth probation violation and arose due to the Defendant "not be[ing] at home on multiple occasions. . . . test[ing] positive for a drug screen, and. . . . [the] multiple times he did not report to the weekly meeting." [II, 8]. Officer Michael further testified that the Defendant was supervised by another officer, but she had since assumed responsibility for the records in the Defendant's case. [II, 7].

On cross-examination, Officer Michael acknowledged that she had never met the Defendant, was not the officer to whom the Defendant was required to report and was not involved in any of the Defendant's prior probation violations. [II, 9-10]. Officer Michael conceded that she had no personal knowledge of whether the Defendant was at home on the dates of the alleged house arrest violations, nor did she have personal knowledge of the Defendant's place of employment or whether he was at work on those dates. [II, 11-12].

The trial court sought clarification of whether a subsequent arrest had occurred. [II, 15-16]. In response, the State provided the judgment of convictions related to the Defendant's third probation violation to both defense counsel and the court for review. [II, 18].

Following the State's presentation of proof, the trial court inquired whether the defense intended to offer any evidence. [II, 19]. Defense counsel responded that they had no additional proof to present and would proceed solely with argument. [I,19]. The court then issued its ruling and did not provide defense counsel the opportunity to argue. [I,19].

The trial court found that the Defendant violated the conditions of his probation with CMC and revoked his probation. [II, 19]. The court stated that CMC probation was "for people who can live at the foot of the cross" and that the Defendant "obviously can [not]." [II, 19]. Additionally, the court found that the Defendant had "obviously made some [weekly] meetings but missed some meetings." [II, 19]. The court credited the Defendant

111 days community corrections on his sentence and ordered that he serve the remainder of his 6-year sentence in confinement at Tennessee Department of Correction. [I, 74]. The Defendant timely appealed to this court.

## ANALYSIS

On appeal, the Defendant argues that the trial court failed to properly adhere to the two-step consideration for probation revocation and, as a result, abused its discretion in revoking his probation. (App. Br. p. 11). First, he contends that the record shows "no reliable evidence" upon which the trial court could determine whether to revoke probation. (App. Br. p. 11). Second, he argues that the "record contains no determination of the appropriate consequence to the [Defendant] upon revocation as required by the second prong of the two-step process." (App. Br. p. 11). Therefore, based on the absence of such findings, the Defendant contends that the record is "insufficiently developed" for de novo review and urges this court to remand to the trial court to make such findings. (App. Br. p. 12). The State responds that there is substantial evidence in the record to support the trial court's order of revocation. We agree with the Defendant that the trial court failed to articulate its findings concerning the consequence imposed for the revocation, which precludes meaningful appellate review.

Appellate courts review a trial court's revocation of a defendant's probationary sentence under an abuse of discretion standard with a presumption of reasonableness, "so long as the trial court places sufficient findings and the reasons for its decisions as to the revocation and the consequence on the record." State v. Dagnan, 641 S.W.3d 751, 759 (Tenn. 2022). "It is not necessary for the trial court's findings to be particularly lengthy or detailed but only sufficient for the appellate court to conduct a meaningful review of the revocation decision." Id. (citing State v. Bise, 380 S.W.3d 682, 705-06 (Tenn. 2012)). Sufficient findings serve "'to promote meaningful appellate review and public confidence in the integrity and fairness of our judiciary.'" Id. (quoting State v. King, 432 S.W.3d 316, 322 (Tenn. 2014)). However, if the trial court fails to place such reasoning on the record, "the appellate court may conduct a de novo review if the record is sufficiently developed for the court to do so, or the appellate court may remand the case to the trial court to make such findings." Id.

After determining that a defendant "has violated the conditions of probation and suspension by a preponderance of the evidence, the trial judge shall have the right . . . to revoke the probation and suspension of sentence and cause the defendant to commence the execution of the judgment as originally entered, or otherwise in accordance with § 40-35-310." Tenn. Code Ann. § 40-35-311(e) (2012). Probation revocation rests within the sound discretion of the trial court, and this court will not disturb the trial court's ruling

absent an abuse of that discretion. State v. Shaffer, 45 S.W.3d 553, 554 (Tenn. 2001) (citing State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991)). To establish an abuse of discretion, "there must be no substantial evidence to support the conclusion of the trial court that a violation of the conditions of probation has occurred." Id. (citing Harkins, 811 S.W.2d at 82). Once the trial court decides to revoke a defendant's probation, it may (1) order confinement; (2) order the sentence into execution as initially entered; (3) return the defendant to probation on modified conditions as necessary; or (4) extend the probationary period by up to two years. See State v. Hunter, 1 S.W.3d 643, 646-47 (Tenn. 1999) (citations omitted); State v. Larry Lee Robertson, No. M2012-02128-CCA-R3CD, 2013 WL 1136588, at *2 (Tenn. Crim. App. Mar, 19, 2013); State v. Christopher Burress, No. E2012-00861-CCA-R3-CD, 2013 WL 1097809, at *6 (Tenn. Crim. App. Mar. 18, 2013); Tenn. Code Ann. §§ 40-35-308, -310, -311 (2012).

"[P]robation revocation is a two-step consideration on the part of the trial court." Dagnan, 641 S.W.3d at 757. First, the trial court must determine whether to revoke probation. Id. at 753. Second, the trial court is to determine the appropriate consequence to impose upon revocation. Id. While a trial court is required to conduct a probation revocation hearing pursuant to Tennessee Code Annotated section 40-35-311(b), this two-step consideration does not obligate the trial court "to hold an additional or separate hearing to determine the appropriate consequence." Id. Importantly, these are "two distinct discretionary decisions, both of which must be reviewed and addressed on appeal." Id. at 757-58. "Simply recognizing that sufficient evidence existed to find that a violation occurred does not satisfy this burden." Id. at 758.

In considering the appropriate consequence to impose upon revocation, a trial court may consider, but is not limited to, the following: the number of revocations, the seriousness of the violation, the defendant's criminal history, and the defendant's character. Id. at 759 n.5. Consideration of past criminal history is only appropriate in the second part of the two-step analysis. Id.

In this case, the Defendant contends that the revocation hearing lacked any reliable evidence upon which the trial court could find a probation violation, as the sole witness testimony by Officer Michael did not "amount even to reliable hearsay." [Appl. Brief p. 11]. The Defendant further contends that the trial court did not give defense counsel a reasonable opportunity to object to such hearsay testimony. [Appl. Reply Brief p. 6]. In response, the State contends that the Defendant waived any challenge to the admissibility of Officer Michael's testimony by failing to object to it in trial court. [State Brief p. 11-12].

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tenn. R.

Evid. 801(c). Although hearsay is generally not admissible at trial, Tenn. R. Evid. 802, the Tennessee Supreme Court has noted that "the full panoply of rights due a defendant" in criminal prosecutions does not apply to probation revocations. State v. Wade, 863 S.W.2d 406, 408 (Tenn. 1993) (internal quotation marks omitted). Specifically, "[t]he strict rules of evidence do not apply in a probation revocation hearing." State v. Stinnett, No. E2012-02289-CCA-R3-CD, 2013 WL 3148724 at *3 (Tenn. Crim. App. June 19, 2013) (citing Barker v. State, 483 S.W.2d 586, 589 (Tenn. Crim. App. 1972)). "Reliable hearsay has been held admissible in a probation revocation hearing so long as the defendant had a fair opportunity to rebut the evidence." Id. (citing State v. Carney, 752 S.W.2d 513 (Tenn. Crim. App. 1988)).

Rule 36(a) states that appellate relief is typically not available when a party has "failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error." Tenn. R. App. P. 36(a); see also Tenn. R. Evid. 103(a) (requiring a timely objection as a prerequisite to a finding of error based on the trial court's admission of evidence); State v. Smith, 24 S.W.3d 274, 280 (Tenn. 2000) (holding that a failure to object to otherwise inadmissible evidence renders the evidence admissible). When a party fails to object, hearsay may "be considered as evidence in the case" and "given such weight" as the trier of fact determines "proper under the circumstances[.]" State v. Bennett, 549 S.W.2d 949, 950 (Tenn. 1977); see also State v. Crafton, No. M2018-00094-CCA-R3-CD, 2019 WL 1531530, at *3 (Tenn. Crim. App. Apr. 9, 2019) (concluding that a trial court is not required to determine the reliability of hearsay when a party fails to object to such evidence).

Although the Defendant contends that the trial court "prevented [defense counsel] from being heard" or presenting argument regarding Officer Michael's lack of personal knowledge in her testimony, the record reflects that defense counsel was afforded ample opportunity to object. During the entirety of Officer Michael's direct examination, defense counsel failed to object to her testimony. Furthermore, on cross-examination, after eliciting that the officer lacked personal knowledge of the Defendant's previous or current probation violations, defense counsel still did not raise an objection. The Defendant contends that "defense counsel deserves latitude to ensure she knows the facts behind the testimony before objecting[,]" and should have been afforded the opportunity to object to this testimony during argument following the State's resting. As previously stated, the record reflects that defense counsel was given ample opportunity to object and failed to do so. The failure to make a contemporaneous objection constitutes a waiver of the hearsay issue on appeal. Thus, the trial court properly relied upon Officer Michael's testimony in its determination that a violation of probation occurred.

Next, the Defendant argues that the trial court failed to adequately state its reasoning for the consequence determination. "[T]he consequence determination essentially

examines whether the beneficial aspects of probation are being served and whether the defendant is amenable to continued probation." State v. Rand, 696 S.W.3d 98, 106 (Tenn. Crim. App. 2024) (citing State v. Robinson, No. M2022-00248-CCA-R3-CD, 2022 WL 17335656, at *4 (Tenn. Crim. App. Nov. 30, 2022)). As the supreme court observed in Dagnan, a trial court may consider factors relevant to the nature and seriousness of the present violation, the defendant's previous history on probation, and the defendant's amenability to future rehabilitation. See Dagnan, 641 S.W.3d at 759 n.5. Factors important to a defendant's amenability to rehabilitation "may include the defendant's acceptance of responsibility and genuine remorse, as well as whether the defendant will comply with orders from the court meant to ensure his or her effective rehabilitation." Rand, 696 S.W.3d at 106; Tenn. Code Ann. § 40-35-102(3)(C) (2019). A trial court may also consider whether the defendant poses a danger to the community or individuals in it. See Tenn. Code Ann. § 40-28-302(1).

The extent of the trial court's reasoning for revoking the Defendant's probation was as follows:

CMC is for people who can live at the foot of the cross. He obviously can[not]. He obviously made some meetings but missed some meetings. I [am] revoking or whatever you call it. I [am] re-designating his place as Tennessee Department of Corrections.

[II, 19].

Although the trial court is not required to make lengthy findings on the record, we are unable to conclude that the record before us is sufficient for meaningful appellate review. The trial court failed to engage in the appropriate consequence determination for probation revocation and failed to provide sufficient findings on the record for our review. The record reflects that the trial court conducted a brief hearing, during which its only articulated findings were that the Defendant could not "live at the foot of the cross" and had "obviously missed some meetings" with his probation officer. These statements alone are insufficient to facilitate meaningful appellate review of the trial court's determination of the consequences after revoking the Defendant's probation. Accordingly, we remand to the trial court for the limited purpose of conducting a hearing to articulate its reasoning for ordering the Defendant to serve the remainder of his sentence in the Tennessee Department of Correction.

**CONCLUSION**

Based on the above reasoning and authority, we affirm the trial court's revocation of the Defendant's probation but remand for the trial court to make findings concerning the consequence imposed for the revocation of probation.

s/_____Camille_____R. McMullen_____
CAMILLE R. MCMULLEN, JUDGE